**JUDGE KOELTL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**06 CV ⠂ 3707**

|  |  |  |
|---|---|---|
| SARAH KATZ, On Behalf of Herself and All Others Similarly Situated, | ) ) ) | **CIVIL ACTION NO.** |
|  | ) |  |
| Plaintiff, | ) ) | **CLASS ACTION COMPLAINT** **FOR VIOLATIONS OF THE** |
| v. | ) ) | **FEDERAL SECURITIES LAWS** |
|  | ) |  |
| IMAGE INNOVATIONS HOLDINGS, INC., ALAIN KARDOS, DERICK SINCLAIR, MICHAEL RADCLIFFE, MICHAEL PRESTON, and CLYDE BAILEY, P.C., | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
|  | ) |  |
| Defendants. | ) ) ) | |

RECEIVED MAY 1 5 2006 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the public documents and announcements made by Defendants, Securities and Exchange Commission ("SEC") filings, and press releases regarding Image Innovations Holdings, Inc. ("Image" or the "Company"), alleges, for her Complaint, as follows:

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of Image securities between April 13, 2004 and March 16, 2006, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule l0b-5 promulgated under Section 10(b) by the SEC [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District and Image conducts business in this District.

5.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Sarah Katz, as set forth in the accompanying certification incorporated by reference herein, purchased the common stock of Image at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Image is a Nevada corporation located at 432 Park Avenue South, New York, New York, 10022.

2

8.      Defendant Alain Kardos was Chief Executive Officer of Image until he was terminated from that position on October 19, 2004. Kardos resigned as director of Image and Image subsidiary, Image Innovations, Inc. on February 3, 2005.

9.      Defendant Derick Sinclair was, at all relevant times, Chief Financial Officer of Image.

10.     Defendant Michael Radcliffe was, at all relevant times, a director of Image and Chief Operating Officer of Image subsidiary, Image Innovations Sports & Entertainment Inc.

11.     Defendant Michael Preston was Chief Executive Officer of Image from April 14, 2005 to the present.

12.     Defendants Kardos, Sinclair, Radcliffe, and Preston are referred to as the "Individual Defendants"

13.     Defendant Clyde Bailey, P.C. ("CBPC") was Image's auditor from the start of the Class Period until it was dismissed on January 11, 2005.

14.     During the Class Period, the Individual Defendants, as senior executive officers and directors of Image were privy to confidential and proprietary information concerning Image, its operations, finances, financial condition, and present and future business prospects. The Individual Defendants also had access to material, adverse, non-public information concerning Image as discussed in detail below. Because of their positions with Image, the Individual Defendants had access to non-public information about its business, finances, products, markets, and present and future business prospects via access to internal corporate documents, conversations, and communications with other corporate officers and employees, attendance at management and board of directors meetings and committees thereof, and via reports and other

3

information provided to them in connection therewith.  Because of their possession of such

information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts

specified herein had not been disclosed to, and were being concealed from, the investing public.

15.     The Individual Defendants are liable as direct participants in, and as co-

conspirators with respect to, the wrongs complained of herein.  In addition, the Individual

Defendants, by reason of their status as senior executive officers and directors were "controlling

persons" within the meaning of Section 20 of the Exchange Act and had the power and influence

to cause the Company to engage in the unlawful conduct complained of herein.  Because of their

positions of control, the Individual Defendants were able to and did, directly or indirectly, control

the conduct of Image's business.

16.     The Individual Defendants, because of their positions with the Company,

controlled and/or possessed the authority to control the contents of its reports, press releases, and

presentations to securities analysts, and through them, reached the investing public.  The

Individual Defendants were provided with copies of the Company's press releases alleged herein

to be misleading, prior to or shortly after their issuance and had the ability and opportunity to

prevent their issuance or cause them to be corrected.  Thus, the Individual Defendants had the

opportunity to commit the fraudulent acts alleged herein.

17.     As senior executive officers and directors and as controlling persons of a publicly-

traded company whose securities were, and are, registered with the SEC pursuant to the

Exchange Act, and which were traded on the NASDAQ and governed by the federal securities

laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful

information with respect to Image's financial condition and performance, growth, operations,

4

financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Image's securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Image's securities by disseminating materially false and misleading statements and/or concealing material, adverse facts. The scheme: (i) deceived the investing public regarding Image's business, operations, and management and the intrinsic value of Image securities; and (ii) caused Plaintiff and the other members of the Class to purchase Image's securities at artificially inflated prices.

<u>**PLAINTIFF'S CLASS ACTION ALLEGATIONS**</u>

19.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased the securities of Image during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

20.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Image securities were publicly traded. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members

5

in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Image or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the Class, as all Class members were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Image; and

c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

6

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

25.     Image was formerly known as Busanda Explorations Inc. ("Busanda"). Busanda was purportedly organized to engage in the exploration and development of mining claims and properties in British Columbia, Canada. On June 30, 2003, Busanda acquired all of the issued and outstanding shares of Image Innovations, Inc. On July 25, 2003, Busanda changed its name to Image Innovations Holdings, Inc.

26.     Image is in the business of selling high- and medium-value sports and entertainment celebrity artwork and collectibles, and has been in the business of selling low-cost consumer items branded under license with the logos of professional sport leagues and teams

27.     Image has three subsidiaries: Image Innovations Sports & Entertainment Inc. ("Image Sports"), which sells celebrity artwork and collectibles through a targeted distribution network, Image Innovations Inc., which is in the business of creating, sourcing and marketing a wide variety of relatively low-cost electronic products by endorsing them with the brand logos of sports teams and leagues and/or other recognized trademarks, and Imaging Innovations Sports and Entertainment Inc., which was incorporated to acquire a warehouse and storage facility in Tannersville, New York.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

28.     On the first day of the Class Period, April 13, 2004, Image filed its Annual Report on Form 10-K for the year ended 2003, which was signed by Preston, Radcliffe, and Sinclair. The Form 10-K reported revenues of $101,743 for fiscal year 2003.

7

29.     On May 13, 2004, Image filed its results for the 2004 first quarter on Form 10-Q, which was signed by Defendants Kardos and Sinclair.  Kardos and Sinclair also signed certifications required by the Sarbanes Oxley Act of 2002 attesting to the accuracy of the Form 10-Q.  In the Form 10-Q, Image reported revenues for the three months ending March 31, 2004 of $180,968.

30.     After this announcement, Image stock rose from $2.45 on May 14, 2004 to $2.60 on May 17, 2004 (the next trading day).

31.     On July 9, 2004, Image filed its results for the 2004 second quarter on Form 10-Q, which was signed by Defendants Kardos and Sinclair.  Kardos and Sinclair also signed certifications required by the Sarbanes Oxley Act of 2002 attesting to the accuracy of the Form 10-Q.  In the Form 10-Q, Image reported revenues for the three and six months ending June 30, 2004 of $738,358 and $919,326, respectively.

32.     On October 21, 2004, Kardos was purportedly terminated as Image's chief executive officer.[1]

33.     On November 15, 2004, Image filed its results for the 2004 third quarter on Form 10-Q, which was signed by Defendants Kardos and Sinclair.  Kardos and Sinclair also signed certifications required by the Sarbanes Oxley Act of 2002 attesting to the accuracy of the Form 10-Q.  In the Form 10-Q, Image reported revenues for the three and nine months ending September 30, 2004 of $2,297,830 and $3,217,156, respectively.

---

[1] According to Kardos, Image did not reveal his termination.  *See* paragraph 38.  Image continued to list Kardos as a signatory on public filings for months.

34.     After this announcement, Image stock rose from $5.85 on November 15, 2004 to $6.00 per share on November 16, 2004 on particularly high volume.

## THE TRUTH BEGINS TO SLOWLY COME OUT

35.     On January 14, 2005, in a Form 8-K filed with the SEC, Image announced that on January 11, 2005, the Audit Committee of Image's Board of Directors dismissed CBPC as its independent accountant and retained Goldstein Golub Kessler LLP ("GGK") to act as Image's independent public accountants to audit and certify Image's financial statements for the year ended December 31, 2004.  No reasons were given for CBPC's dismissal.

36.     After this announcement, Image stock fell about 11% from $6.25 on January 14, 2005 to $5.55 per share on January 18, 2005 (the next trading day).

37.     On January 31, 2005, Kardos filed an action in the Supreme Court of British Columbia, naming as defendants Image, Image Innovations, Inc., and Sinclair.  Kardos alleged: (i) that the defendants wrongfully refused or neglected to return to him certificates representing 700,000 shares of Image's common stock; and (ii) that he was wrongfully dismissed from his position as an officer and employee of Image and Image Innovations, Inc. on October 21, 2004.  Kardos also alleged deficiencies with Image's corporate governance and its business ethics as they relate to his alleged termination.

38.     On February 3, 2005, Kardos resigned as director of Image and its wholly owned subsidiary, Image Innovations, Inc.  As mentioned above, Kardos' resignation letter, dated February 3, 2005, alleges, among other things, that Image never revealed his termination:

> To: The Boards of Directors of Image Innovations Holdings Inc. ("Holdings")
> and Image Innovations Inc. ("Image"); (together the "Companies").

I herby [stet] give notice that I am, effective immediately, resigning my positions as a director of Holdings and Image.

My resignation is caused by my concern with the corporate governance of Holdings, and its business ethics, as they relate to my termination as the President and CEO of the Companies, and related issues.

On October 19, 2004, I was terminated as President and CEO of both of the Companies, without cause, notice, or pay of lieu. I have been unable to access the Companies' offices since that time, and unable to participate in its day to day business. Despite my written (through counsel) and verbal requests, no disclosure of my termination has been made to the SEC or the public at large.

Following my termination, I entered into negotiations with Holdings, through Mr. Armenakis [Image's counsel], in respect of severance. My counsel was advised, in December, 2004, that the terms of a severance package had been reviewed and approved by Mr. Gononsky, Mr. Radcliffe, Mr. Sinclair and (presumably) himself. Subsequently, my counsel has been advised the Board does not intend to honour this commitment and that no severance will be offered or provided.

Further, I am the legal and beneficial owner of 700,000 shares in Holdings which, upon issuance, were provided to Mr. Derek Sinclair by Holdings's transfer agent. Despite numerous requests from my counsel, Mr. Sinclair and the company have refused to provide me with the share certificates related to these shares. Holdings has also, during the above negotiation, improperly refused to return them to me until I entered into restrictions on my ability to sell the shares as part of the provision of severance.

I am saddened at having to tender these resignations, especially in the circumstances outlined above.

39.     On February 8, 2005, Kardos resigned from his position as a director of Image

Sports.

40.     On April 1, 2005, Image filed a NT10-K, notifying the SEC that it could not file

its Form 10-K on time because it did not, due to "limited personnel," have time to completely

review Image's financial information.

41.    On April 14, 2005, Michael Preston was appointed Chief Executive Officer of Image.

42.    On April 15, 2005, Image filed its Annual Report on Form 10-K for the year ended 2004, which was signed by Preston and Sinclair. The Form 10-K reported revenues of $6.1 million for fiscal 2004.

43.    On May 17, 2005, Image filed a NT10-Q, notifying the SEC that it could not file its 2005 first quarter Form 10-Q on time because it did not, due to "limited personnel," have time to completely review Image's financial information.

44.    On May 23, 2005, Image filed its results for the 2005 first quarter on Form 10-Q, which was signed by Defendants Preston and Sinclair. In the Form 10-Q, Image reported revenues for the three months ending March 31, 2005 of $464,502.

45.    On August 15, 2005, Image filed a NT10-Q, notifying the SEC that it could not file its second quarter 2005 Form 10-Q on time because it did not, due to "limited personnel," have time to completely review Image's financial information.

46.    On August 22, 2005, Image filed its results for the 2005 second quarter on Form 10-Q, which was signed by Defendants Preston and Sinclair. In the Form 10-Q, Image reported revenues for the three and six months ending June 30, 2005 of $48,115 and $512,617, respectively.

47.    After this announcement, Image stock rose from $4.25 on August 22, 2005 to $4.55 per share on August 25, 2005 (the next trading day).

48.    On November 8, 2005, Image announced that the lawsuit filed by former CEO Kardos had been settled, with H.E. Capital, a large holder of Image stock, agreeing to deposit the

11

shares in question into escrow and purchase the same at specified times at an amount agreed by

Kardos and H.E. Capital. Kardos' claim in respect of the alleged wrongful termination was

dismissed with no payments required to be made by any party.

49.     On November 14, 2005, Image filed its results for the 2005 third quarter on Form

10-Q, which was signed by Defendants Preston and Sinclair. In the Form 10-Q, Image reported

revenues for the three and nine months ending September 30, 2005 of $397,487 and $910,104,

respectively.

50.     On November 22, 2005, the Public Company Accounting Oversight Board (the

"PCAOB") released an Order Instituting Disciplinary Proceedings, Making Findings, and

Imposing Sanctions In the Matter of Clyde Bailey, P.C. and Clyde B. Bailey, CPA (the

"Order"). Pursuant to the Order, in which the registration of CBPC with the PCAOB was

revoked, the PCAOB determined that in connection with CBPC's fiscal year 2003 audit of

Image's financial statements (the "2003 Audit"), CBPC relied upon the work of another audit

firm as a component of CBPC's audit procedures and the audit evidence obtained through

procedures performed by such other firm constituted substantially all of the audit evidence

obtained to support the 2003 Report. The Order stated that the level of planning, testing,

supervision and review exercised by CBPC with regard to the other audit firm's work was not

sufficient to enable CBPC to use the work of such other auditor in the same manner as if it had

been performed by CBPC's own personnel. The Order further stated that consequently, CBPC

had violated PCAOB standards in issuing the 2003 Report.

51.     On December 1, 2005, Image's management, in consultation with GGK,

determined that the audit report issued by CBPC, in respect of Image's consolidated financial

statements for the fiscal year ended December 31, 2003, should no longer be relied upon. Image, in consultation with GGK, stated that it was investigating whether a re-audit of the financial statements for the year ended December 31, 2003 was necessary or appropriate.

52.     After the December 1st announcement, shares of Image fell 10% from $3.70 on December 1, 2005 to $3.46 on December 2, 2005.

53.     On December 5, 2005, the Audit Committee of Image concluded that a forensic accounting investigation concerning Image's consolidated financial statements for the fiscal year ended December 31, 2004 (the "2004 Financials") would be necessary to confirm Image's recorded revenue and receivables in respect of such period. At such time, Image advised its independent registered accounting firm, GGK, that such forensic audit would be commenced.

54.     On March 16, 2006, the forensic accounting firm retained by the Audit Committee to conduct the investigation presented preliminary findings to the Audit Committee, concluding that a number of revenue and receivables in respect of Image's inventory sales were improperly recorded. On March 16, 2006, based on such preliminary findings, the Audit Committee, in consultation with the forensic accountant, determined that the 2004 Financials and the related independent auditor's report can no longer be relied upon.

55.     Thus, at the end of the day on March 16, 2006, Image announced:

> [Image] anticipates that a restatement of the 2004 Financials will be necessary. Since the forensic accounting firm has not yet completed its investigation, the exact nature and full extent of the restatement is not known at this point. However, it is expected that the restatement will reflect materially lower revenue, and materially greater net loss, than originally reported by the Registrant in the 2004 Financials. The Registrant advised GGK of the filing of this Report.

13

56.     Because this announcement was after the close of trading on March 16, 2006, Image stock did not fall until the next day, when it fell about 16% from $1.55 on March 17, 2006 to $1.30 on March 20, 2006, the next trading day.

57.     Accordingly, as Image has now admitted, Image's revenue announcements during the Class Period, which are detailed above in paragraphs 28-46, were all materially false and misleading.  This is true notwithstanding the fact that the restatements have not yet been quantified because a restatement is not required unless there is a *material* change in a reported figure.

## POST-CLASS PERIOD EVENTS

58.     On March 26, 2006, GGK, Image's independent registered accounting firm, resigned as auditor.  In its letter of resignation to the Image's Audit Committee Chairman, GGK stated that based on discussions with Image and its forensic accountants, GGK could no longer rely on the representations of management that were necessary for GGK to perform auditing work on Image's behalf.  The letter stated that as a result, GGK was withdrawing its auditors report on Image's financial statements for the year ended December 31, 2004.

59.     GGK set forth a variety of factors that prompted its resignation.  Among the reasons set forth in the letter, GGK stated that Image's Chief Executive Officer Preston refused to inform GGK as to what triggered the forensic accounting investigation.  GGK also stated that the investigation has, at a minimum, called into serious question virtually all of Image's 2004 revenue, and GGK stated that it believes Image has not taken adequate remedial steps in response to the findings of the investigation.  Further, GGK stated that Image apparently is in the process of offering or selling its securities, or has offered or sold its securities, during the investigation.

14

60. On March 30, 2006, Image's CFO, Sinclair, who is also a member of Image's Board, received a letter from James Armenakis, an attorney who is also a director, identifying himself as the General Counsel of Image and informing Sinclair that a resolution purporting to remove him and Image's Chief Executive Officer, Preston, as Image directors had been authorized by approximately 75.4% of Image's shareholders pursuant to written consents thereof.

61. Thereafter, Image received a letter from Preston challenging the validity and effectiveness of the purported action on the basis of the failure by the party or parties soliciting such consents to comply with the proxy solicitation and information statement rules of the Exchange Act. Furthermore, Preston indicated in his letter that he has not yet fully examined the written consents to determine the validity of the consents themselves, but believes that certain of the consents were not executed properly.

62. On April 3, 2006, Image announced that because of GGK's resignation, Image would be unable to file its annual report on Form 10-K for fiscal year 2005.

63. On April 6, 2006, Image's Chief Executive Officer Preston met with members of the Enforcement Division of the SEC to discuss the nature of, and facts underlying, the forensic accounting investigation.

64. On April 9, 2006, Arthur Gononsky resigned as Chairman of the Board of Directors of Image and as a member of the Audit Committee.

65. Gononsky's resignation letter is very telling:

> It was and is my belief that the Board should have engaged independent counsel, with no ties to management or existing counsel, to conduct and oversee an investigation into these matters which would of course have included a thorough forensic audit. Others felt, and apparently feel, differently. Accordingly, the forensic accounting firm of Marks Paneth & Shron LLP was

engaged to investigate the alleged improper accounting treatment and issued a "preliminary" report in March that raised more questions than it answered. While I do not pretend to have the level of financial and accounting sophistication of Mr. Preston, Mr. Sinclair or Mr. Whittle, it is my belief that, had independent counsel been engaged, unconnected with the management on whose watch the accounting improprieties are alleged to have occurred or been certified, this investigation would have proceeded to a far more rapid conclusion. Moreover, at this point, the Company's auditors, GGK, have resigned, alleging that they can no longer rely on the representations of management. I also believe that Mr. Preston's decision to withhold the payment of wages to line employees who are not in any way involved in the alleged improprieties is morally wrong and most probably illegal, has not, so far as I am aware, been mandated by the SEC, and can only have the effect of further damaging the Company and its shareholders.

In short, the manner in which management has proceeded, in my opinion, has resulted in continuing and unnecessary harm to the interests of shareholders. In light of the foregoing, you will understand that I feel that I can no longer remain a member of the Board and effectively represent the interests of the shareholders of the Company. Accordingly, effective immediately, I hereby resign as a member of the Board of Directors of Image Innovation Holdings, Inc., as a member of any Committee thereof, and as Chairman of the Board.

66.     On April 10, 2006, James Armenakis also resigned from Image's Board of

Directors.

67.     Armenakis' resignation letter is equally damning:

This is to inform you that effective immediately, Armenakis & Armenakis hereby resigns as General Counsel to the Company. In addition, effective immediately, I hereby resign as a director of the Company.

We are compelled to take this action as a result of the Company's continuing failure to follow our advice concerning its operations. Despite the fact that the Company has instructed us to draft numerous contracts, referred litigation matters to our firm for resolution, and both Michael Preston and Snow Becker Krauss, P.C. have asked us to draft opinion letters in connection with various transactions, they suddenly refuse to acknowledge our role as General Counsel.

The Company also refuses to follow our advice to terminate the absentee Chief Financial Officer [Sinclair]. It should be noted that although the

alleged incidents listed in the forensic accountants' review occurred during his tenure, there is no mention of Derick Sinclair in that report. This can only cause one to conclude that the directions given to the forensic accountants and/or their review, are suspect.

Similarly, despite clear indication that the Chief Executive Officer has lost the confidence of an overwhelming majority of the shareholders, he continues to ignore their wishes and continues to take steps to consolidate the daily operations of the Company and its assets under his sole control. Under his reign, the Company's stock has steadily declined in value and is unlikely to recover.

As a result of these circumstances our further involvement with the Company has become untenable.

68.     Also, on April 10, 2006, Image fired the former Chief Executive Officer of Image Sports.

## SCIENTER

69.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading, knew that such statements or documents would be issued, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Image, their control over and/or receipt of information of Image's allegedly materially misleading statements and/or their associations with the Company that made them privy to confidential, proprietary information concerning Image, participated in the fraudulent scheme alleged.

70.     The numerous resignations and terminations, of both executives and accountants, is highly probative of Defendants' scienter. During the Class Period, Kardos was fired and later

resigned from Image and Image subsidiaries, CBPC was fired, Arthur Gonorsky and James

Armenakis resigned, and GGK resigned. This string of resignations and terminations strongly

suggests that intentional wrongdoing had occurred. Moreover, the resignation letters of

Gonorsky and Armenakis explicitly implicate Preston and Sinclair.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

71. The market for Image's securities was open, well-developed and efficient at all

relevant times. As a result of these materially false and misleading statements and failures to

disclose, Image's securities traded at artificially inflated prices during the Class Period. Plaintiff

and the other members of the Class purchased or otherwise acquired Image securities relying

upon the integrity of the market price of Image's securities and market information relating to

Image, and have been damaged thereby.

72. During the Class Period, Defendants materially misled the investing public,

thereby inflating the price of Image's securities, by publicly issuing false and misleading

statements and omitting to disclose material facts necessary to make Defendants' statements, as

set forth herein, not false and misleading. Said statements and omissions were materially false

and misleading in that they failed to disclose material, adverse information and misrepresented

the truth about the Company, its business and operations, as alleged herein.

73. At all relevant times, the material misrepresentations and omissions particularized

in this Complaint directly or proximately caused or were a substantial contributing cause of the

damages sustained by Plaintiff and the other members of the Class. As described herein, during

the Class Period Defendants made or caused to be made a series of materially false or misleading

statements about Image's business, prospects and operations. These material misstatements and

omissions had the cause and effect of creating in the market an unrealistically positive assessment of Image and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

### Applicability Of Presumption
### Of Reliance: Fraud-On-The-Market Doctrine

74.   . At all relevant times, the market for Image's securities was efficient for the following reasons, among others:

      a. Image's stock met the requirements for listing, and was listed and traded on the NASDAQ, a highly efficient and automated market;

      b. As a regulated issuer, Image filed periodic public reports with the SEC and the NASDAQ;

      c. Image regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

      d. Image was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the

public marketplace.

75.     As a result of the foregoing, the market for Image's securities promptly digested current information regarding Image from all publicly available sources and reflected such information in Image's stock price.  Under these circumstances, all purchasers of Image's securities during the Class Period suffered similar injury through their purchase of Image's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

76.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Image who knew that statement was false when made.

20

## COUNT I

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     Throughout the Class Period, Image and the Individual Defendants carried out a plan, scheme, and course of conduct that was intended to and did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Image's securities; and (iii) cause Plaintiff and the other members of the Class to purchase Image's securities at artificially inflated prices.  In furtherance of this unlawful scheme and course of conduct, Defendants took the actions set forth herein.

79.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Image's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

80.     In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated

disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. § 210.01 *et seq.*) and Regulation S-K (17 C.F.R. § 229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition, and earnings so that the market price of the Company's securities would be based on truthful, complete, and accurate information.

81.     Image and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal material, adverse information about the business, operations, and future prospects of Image as specified herein.

82.     Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Image's value and performance, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Image and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Image's securities during the Class Period.

83.     The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level officers and/or directors at the Company during the Class Period; (ii) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets,

22

plans, projections and/or reports; and (iii) the Individual Defendants were aware of the

Company's dissemination of information to the investing public that they knew or recklessly

disregarded was materially false and misleading.

84.     Defendants had actual knowledge of the misrepresentations and omissions of

material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them.  Such

Defendants' material misrepresentations and/or omissions were done knowingly or recklessly

and for the purpose and effect of concealing Image's operating condition and future business

prospects from the investing public and supporting the artificially inflated price of its securities.

As demonstrated by Defendants' overstatements and misstatements of the Company's business,

operations and earnings throughout the Class Period, Defendants, if they did not have actual

knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain

such knowledge by deliberately refraining from taking those steps necessary to discover whether

those statements were false or misleading.

85.     As a result of the dissemination of the materially false and misleading information

and failure to disclose material facts, as set forth above, the market price of Image's securities

was artificially inflated during the Class Period.  In ignorance of the fact that market prices of

Image's publicly-traded securities were artificially inflated, and relying directly or indirectly on

the false and misleading statements made by Defendants, or upon the integrity of the market in

which the securities trade, and/or on the absence of material, adverse information that was known

to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants

23

during the Class Period, Plaintiff and the other members of the Class acquired Image securities during the Class Period at artificially high prices and were damaged thereby.

86.    At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Image, which were not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired their Image securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

87.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

88.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### COUNT II

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

89.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

90.    The Individual Defendants acted as controlling persons of Image within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with

24

the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

91.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

92.     As set forth above, Image and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Image and the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

      B.     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      D.     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 15, 2006

                        **BERNSTEIN LIEBHARD & LIFSHITZ, LLP**

                        *Joseph R. Seidman*

                        Sandy A. Liebhard (SL-0836)
                        U. Seth Ottensoser (UO-9703)
                        Joseph R. Seidman, Jr. (JS-9260)
                        10 East 40th Street
                        New York, NY  10016
                        Telephone (212) 779-1414

                        **Attorneys for Plaintiff**

FAX NO. :                                      May. 01 2006 02:45PM  P2

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _____SARAH  KATZ_____, ("Plaintiff"), declare the following as to the claims asserted under the federal securities laws, that:

1.      Plaintiff has reviewed the complaint filed in this matter and has authorized the filing of a complaint based on similar allegations in a related or amended complaint. Plaintiff retains Bernstein Liebhard & Lifshitz, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff=s counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial. I understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon execution of this Certification.

4.      Plaintiff's transaction(s) in the IMAGE INNOVATIONS HOLDINGS, INC. security that is the subject of this action during the class period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 1000 | IMGV | Buy | 11/16/04 | @ 6.37 |
|  |  |  |  |  |
|  |  |  |  |  |

Please list other transactions on a separate sheet of paper, if necessary.

5.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for the class in any action filed under the federal securities laws except as indicated here:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, or as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _30_ day of __April__, 2006.

_____
Signature

___SARAH   KATZ___
Print Name

___160  E.  88th ST  # 8A___
Address

___NY , NY 10128___
City, State, Zip

05/01/2006 MON 03:37  [TX/RX NO 9953] 🗹003