```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------
```

**SARAH KATZ, on behalf of herself
and all others similarly situated,**

              **Plaintiff,**

       - against -

**IMAGE INNOVATIONS HOLDINGS, INC.,
ALAIN KARDOS, DERICK SINCLAIR,
MICHAEL RADCLIFFE, JAMES ARMENAKIS,
ARTHUR GONONSKY, CLIFFORD WILKINS,
CHRIS SMITH, JOSEPH RADCLIFFE,
MICHELLE RADCLIFFE, DENISE CONSTABLE,
GOLDSTEIN GOLUB KESSLER LLP, CLYDE
BAILEY, P.C., and H.E. CAPITAL, S.A.**

              **Defendants.**

```
-----------------------------------------
```

06 Civ. 3707 (JGK)

<u>MEMORANDUM OPINION
AND ORDER</u>

**JOHN G. KOELTL, District Judge:**

On April 30, 2007, Michael Radcliffe, Joseph Radcliffe, and Arthur Gononsky answered the First Amended Complaint and commenced third-party actions against Michael Preston. On July 16, 2007, Preston answered the third-party complaints against him and asserted counterclaims and a fourth-party action against eight parties, including Gononsky, Joseph Radcliffe and Michael Radcliffe (the "Radcliffes"), Goldstein Golub Kessler LLP ("GGK"), and Eric Altstadter, an audit partner of GGK (together, the "defendants"). In his counterclaims and fourth-party complaint, Preston asserts causes of action against the Radcliffes and Gononsky for fraudulent inducement, common law

fraud, and fraudulent misrepresentation. Against GGK and Altstadter, Preston has asserted a claim of negligent misrepresentation. The defendants now move to dismiss Preston's counterclaims and fourth-party complaint against them.

I.

The following facts as alleged in the fourth-party complaint are accepted as true. From February 2005 to April 15, 2005, the Radcliffes and Gononsky, along with H.E. Capital S.A. and two of its directors, made material misrepresentations to Preston concerning the financial status of Image in order to induce him to agree to become CEO of Image. (Counterclaims and Fourth-Party Complaint ¶ 36.) These defendants represented to Preston that Image had revenues in excess of $6 million for the year ended December 31, 2004 and had business opportunities to achieve similar revenue in 2005. (Id. at ¶ 37.) These defendants made the statements knowing them to be false and with the intention of inducing Preston's reliance on the representations. (Id. at ¶¶ 37-39.)

Furthermore, from March 2005 to April 15, 2005, GGK and Altstadter, the audit partner at GGK who had primary responsibility for GGK's audit of Image, represented to Preston that Image had revenues in excess of $6 million for the year ended December 31, 2004. (Id. at ¶ 35.) Had they performed

their audit in accordance with Generally Accepted Auditing Standards ("GAAS") they would have discovered that was not true. (Id.)  By April 14, 2005, Preston had been advised by Altstadter, GGK, and Joseph Radcliffe, among others, that GGK had completed its audit of Image for the year ended December 14, 2004 and that GGK was going to issue a "clean" opinion. (Id. at ¶ 25.)  GGK and Altstadter were aware that Preston intended to rely on Image's financial statements to determine whether to accept the CEO position at Image. (Id. at ¶¶ 70-71.)

As a result of his reliance on these misrepresentations, Preston was induced to enter into an employment agreement whereby he became Chief Executive Officer of Image on April 14, 2005 (the "Agreement"). (Id. at ¶¶ 2, 13, 26, 29.) Subsequent to becoming CEO, Preston discovered that Image's audited financial statements that were included in Image's Form 10-K filed with the SEC on April 15, 2005 contained material misrepresentations, including a material overstatement of revenues and shareholders' equity. (Id. at ¶ 31.)  The Radcliffes benefited from sales of stock of Image at inflated prices, and Gononsky participated by buying shares of Image and wiring payment to Image's principal operating subsidiary. (Id. at ¶ 33.)  As a result of his reliance on these misrepresentations, Preston has suffered damages. (Id. at ¶¶ 40-42.)

II.

In deciding a motion to dismiss counterclaims and a fourth-party complaint pursuant to Rule 12(b)(6), the allegations in the claimant's pleadings are accepted as true and all reasonable inferences must be drawn in the claimant's favor. McCarthy v. Dun & Bradstreet Corp._, 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Group LLC, No. 06 Civ. 5936, 2007 WL 4267190, at *4-*5 (S.D.N.Y. Dec. 3, 2007). The Court should not dismiss the counterclaims if the counter-plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly v. Bell Atlantic Corp., 127 S. Ct. 1955, 1974 (2007).

III.

A.

Preston has asserted claims against the Radcliffes and Gononsky for fraudulent inducement, common law fraud, and fraudulent misrepresentation. The Radcliffes and Gononsky both move to dismiss on the grounds that Preston has failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

Under New York law, which the parties agree applies to the claims, a claim for fraud based on false statements must allege

the following five elements: (1) a material false representation of an existing fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; (4) reasonable reliance; (5) and damages. See, e.g., Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994); Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265, 277 (S.D.N.Y. 2001).

In addition, Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Rule 9(b) requires that a complaint "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).

On the basis of the current record, it is plain that the claims as alleged are defective because the allegations contained in Preston's pleadings do not satisfy the particularity requirements of Rule 9(b).  In particular, Preston does not plead with sufficient particularity the misrepresentations he alleges were made by each defendant, nor does he sufficiently allege when and where the statements were made.  Vague allegations of the content of misrepresentations made by a group of individuals over a period of months does not

satisfy the requirements of Rule 9(b). See, e.g., Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986); Rich v. Maidstone Fin., Inc., No. 98 Civ. 2569, 2001 WL 286757, at *6 (S.D.N.Y. March 23, 2001); Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581, 1997 WL 88894, at *2 (S.D.N.Y. March 3, 1997). At the argument of the current motions, counsel for Preston did not contend that he had complied with these arguments and asserted that he could provide more particularized pleadings.

In opposing the motion to dismiss, Preston specifically requested leave to amend should dismissal be granted. The defendants' attempt to resist this request is without merit. "Dismissals made pursuant to [Rule 9(b)] . . . are almost always accompanied by a grant of leave to amend, unless the plaintiff has had a prior opportunity to amend its complaint or the allegations were made after full discovery in a related case." Aetna Cas. and Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 581 (2d Cir. 2005) (citing Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986)); see also Pross v. Katz, 784 F.2d 455, 459 (2d Cir. 1986); Fed. R. Civ. P. 15(a). The Court will therefore grant Preston the opportunity to file amended claims.

In light of the fact that the Court has granted Preston leave to amend, it is not necessary for the Court to reach the issue of whether Preston is barred by Section 14.6 of his employment agreement from asserting claims based on fraudulent

inducement.  Section 14.6 generally provides that there are no other representations with respect to Image and its business. Under New York law, the Court must examine the specific allegations in the amended pleading to determine whether the disclaimer in Section 14.6 is sufficiently specific to preclude Preston from establishing reasonable reliance on the alleged misrepresentations.  See Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir. 1997) (citing Danann Realty Corp. v. Harris, 157 N.E.2d 597 (N.Y. 1959)).  Because the Court does not reach the disclaimer defense, it is also not necessary for the Court to reach the question of whether Gononsky and the Radcliffes, who were not parties to the Agreement, can raise the clause as a defense to Preston's claims.

Therefore, the motion to dismiss Preston's counterclaims and fourth-party complaint against Gononsky and the Radcliffes is **granted without prejudice** to the filing of amended counterclaims and an amended fourth-party complaint.

B.

Preston has also brought a claim for negligent misrepresentation against GGK and Altstadter.  The claim is based on an allegation that GGK and Altstadter made oral misrepresentations upon which Preston relied in his decision to become the CEO of Image.  GGK and Altstadter move to dismiss the

7

claim of negligent misrepresentation on the grounds that the claim does not plead the requisite relationship between Preston and GGK and Altstadter to state a claim for negligent misrepresentation under New York law.

In particular, Preston alleges that prior to executing his employment agreement with Image he was informed by Altstadter and GGK, among others, that "GGK was going to issue a 'clean' opinion" on Image's 2004 financial statements. (Counterclaims and Fourth-Party Complaint ¶ 25.) Preston also alleges that "[d]uring the period of time from March, 2005 to April 15, 2006, GGK and Eric Altstadter negligently represented to Preston that Image had revenues in excess of $6 million" for 2004. (Id. at ¶ 35.) Furthermore, Preston asserts that "[d]uring the period March 2005 through April 15, 2005, GGK and Eric Altstadter had direct communications and personal meetings with Preston, and were aware that Image's financial statements . . . were going to be used by Preston for the particular purpose of determining whether to accept the CEO position at Image" and "that Preston intended to rely on such financial statements to determine whether to accept the CEO position at Image." (Id. at ¶¶ 70-71.)

New York courts have "long held that before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing

8

that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood, 605 N.E.2d 318, 320 (N.Y. 1992). In Credit Alliance Corp., et al. v. Arthur Andersen & Co., 483 N.E.2d 110 (N.Y. 1985), modified, 489 N.E.2d 249 (N.Y. 1985), the New York Court of Appeals articulated the relevant factors for determining when an accountant can be liable, absent privity, to a third party who relies to its detriment on negligently prepared financial reports. The court explained that before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports:

> (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance.

Id. at 118; see also Dorking Genetics v. United States, 76 F. 3d 1261, 1269 (2d Cir. 1996). Liability to a third-party will not be imposed upon the basis of foreseeability only; there must be "actual conduct [by the defendant] linking [it] to the noncontractual party." Credit Alliance, 483 N.E.2d at 119 n. 11.

Preston has failed to satisfy the pleading requirements under Credit Alliance. In order to satisfy the first two

9

prongs, "the plaintiff must 'show that [the accountant] was well aware that a primary, if not the exclusive, end and aim of auditing its client' was to provide information to the plaintiff." BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 985 (S.D.N.Y. 2003) (quoting Credit Alliance, 483 N.E.2d at 120). Preston alleges that when GGK and Altstadter made the representations to Preston, they were aware that Preston intended to rely upon the financial statements. However, Preston conceded at argument that GGK was engaged to audit Image's financial statements prior to the time Preston was asked to consider becoming Image's CEO, and that there are no allegations in the fourth-party complaint that GGK was engaged for the particular purpose of providing statements to Preston to be used in his decision of whether to take the position at Image. See id. (citing to Credit Alliance, 483 N.E.2d at 119, and Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co., 597 N.E.2d 1080, 1086-87 (N.Y. 1992)).

Furthermore, with respect to the third prong, Preston simply asserts that GGK and Altstadter knew that he intended to rely on the financial statements, but fails to assert conduct on the part of GGK or Altstadter evincing their understanding that Preston was relying on the financial statements. Conclusory statements about the significance of meetings and communications are insufficient. BHC Interim Funding, 283 F. Supp. 2d. at 986.

10

Finally, Preston also conceded at argument that the fourth-party complaint contains no specific allegations that GGK provided Preston with written statements prior to the time that he entered into the employment agreement. To the extent that Preston is claiming reliance only upon oral representations, New York courts have refused to extend liability under Credit Alliance to verbal assurances. See, e.g., LaSalle Nat. Bank v. Ernst & Young, 729 N.Y.S.2d 671, 674 (App. Div. 2001). Preston's claims against GGK and Altstadter are therefore **dismissed without prejudice** to repleading.

CONCLUSION

For the reasons stated above, Preston's counterclaims and fourth-party complaint against the Radcliffes, Gononsky, GGK, and Altstadter are **dismissed without prejudice** to the filing of amended pleadings. The Court will of course consider all arguments raised in opposition to any amended pleadings. Any such amended pleading must be filed within twenty days.

The Clerk is directed to close Docket Nos. 93, 95, and 102.

SO ORDERED.

Dated: New York, New York
March 21, 2008

John G. Koeltl
United States District Judge